UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE MALLOY, | |
| Plaintiff, | |
| -against- | **ORDER** |
| MICHAEL R. POMPEO, Secretary of State, United States Department of State,[1] | 18 Civ. 4756 (PGG) |
| Defendant. | |
| JANE MALLOY, | |
| Plaintiff, | |
| -against- | |
| UNITED STATES DEPARTMENT OF STATE, MICHAEL R. POMPEO, Secretary of State, United States Department of State, | 19 Civ. 6533 (PGG) |
| Defendants. | |

PAUL G. GARDEPHE, U.S.D.J.:

On May 30, 2018, pro se Plaintiff Jane Malloy – a former U.S. State Department

employee who worked at the U.S. Mission to the United Nations in New York City –

commenced an action (the "2018 Action") asserting claims of employment discrimination and

retaliation on the basis of race, sex, age, and disability in violation of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 1981, the Age Discrimination in Employment Act ("ADEA"),

the Rehabilitation Act, the Americans with Disabilities Act ("ADA"), the Family and Medical

Leave Act ("FMLA"), the New York State Human Rights Law ("NYSHRL"), and the New York

---

[1]  Pursuant to Federal Rule of Civil Procedure 25(d), Secretary of State Michael Pompeo is
substituted as the originally named defendant, John Sullivan.

City Human Rights Law ("NYCHRL") against the U.S. Secretary of State.  (No. 18 Civ. 4756, Cmplt. (Dkt. No. 1) at 3-4)[2]  On November 28, 2018, Secretary of State Michael Pompeo moved for partial dismissal of the Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  (No. 18 Civ. 4756, Def. Br. (Dkt. No 27))

On July 11, 2019, Malloy commenced another action (the "2019 Action") against Secretary Pompeo and the U.S. Department of State asserting additional claims of discrimination and retaliation on the basis of race and disability in violation of Title VII, 42 U.S.C. § 1981, the Rehabilitation Act, the ADA, and the FMLA.  (No. 19 Civ. 6533, Cmplt. (Dkt. No. 2) at 3-4)  On December 17, 2019, the Court consolidated the 2018 Action and the 2019 Action.  (No. 18 Civ. 4756, Order (Dkt. No. 47))

On January 10, 2020, Defendants moved for partial dismissal of the Complaint in the 2019 Action under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  (No. 19 Civ. 6533, Def. Br. (Dkt. No. 24))

For the reasons stated below, Defendants' motions will be granted in part and denied in part.

## BACKGROUND

### I.   FACTS

Malloy is a 53-year-old African-American female who suffers from anemia and uterine fibroids.[3]  (No. 19 Civ. 6533, Cmplt. (Dkt. No. 2) at 11; No. 18 Civ. 4756, Cmplt. (Dkt. No. 1) at 4, 16)

---

[2]  Citations to page numbers refer to the pagination generated by this District's Electronic Case Files ("ECF") system.

[3]  "Uterine fibroids are noncancerous growths of the uterus that often appear during childbearing years. . . . In women who have symptoms, the most common signs and symptoms of uterine fibroids include . . . [f]requent urination [and] [d]ifficulty emptying the bladder. . . ."  Uterine

In 1990, Malloy was hired by the U.S. Mission to the United Nations (the "Mission") – which is part of the U.S. State Department – as a Technical Information Specialist in the Mission's Research Unit.  (No. 18 Civ. 4756, Cmplt. (Dkt. No. 1) at 3, 5; No. 19 Civ. 6533, Cmplt. (Dkt. No. 2) at 11)  Malloy was the first and only African-American to hold this position.  (No. 18 Civ. 4756, Cmplt. (Dkt. No. 1) at 6)  All of Malloy's co-workers were less than 40 years old.  (Id.)

For the initial seven years of her employment, Malloy's pay grade was "GG-7."[4] (No. 18 Civ. 4756, Pltf. Opp. (Dkt. No. 37) at 41[5]; No. 19 Civ. 6533, Cmplt. (Dkt. No. 2) at 12) In 1998, Malloy was promoted from GG-9 to GG-11.[6]  (No. 19 Civ. 6533, Cmplt. (Dkt. No. 2) at 12)

At some point between 1999 and 2001, Malloy filed a complaint with the State Department's Equal Employment Opportunity ("EEO") office, alleging that she had been subjected to a hostile work environment on the basis of her race.[7]  (No. 19 Civ. 6533, Cmplt. (Dkt. No. 2) at 12)

---

fibroids, MAYO CLINIC, www.mayoclinic.org/diseases-conditions/uterine-fibroids/symptoms-causes/syc-20354288.

[4]  GG is the "[p]ay plan used by the Department to denote a pay schedule similar to the General Schedule."  Civil Service Benefits, U.S. State Department, https://careers.state.gov/work/benefits/cs/#gg.

[5]  Given Malloy's pro se status, the Court considers factual allegations set forth in her opposition briefs.  See Mira v. Argus Media, No. 15 Civ. 9990 (RJS), 2017 WL 1184302, at *3 n.4 (S.D.N.Y. Mar. 29, 2017) ("[D]istrict courts sometimes consider new factual allegations made in a pro se plaintiff's opposition brief[ ]. . . .").

[6]  The record does not reveal when Malloy was promoted to GG-9.

[7]  The record does not disclose the specific allegations set forth in Malloy's EEO complaint, or how her complaint was resolved.  In 2005, Malloy brought an employment discrimination lawsuit against the State Department, but her case was dismissed as untimely.  See Malloy v. Rice, No. 05 Civ. 9095 (LAK) (S.D.N.Y.), Dkt. Nos. 21, 25.  The record does not reveal the specific allegations Malloy made in the 2005 action.

Malloy "slowly made her way up the ranks[,] obtaining her last promotion to the GG-12 in 2009."  (No. 18 Civ. 4756, Pltf. Opp. (Dkt. No. 37) at 41)  Malloy claims that she should have been promoted earlier given her "stellar performance reviews."  (No. 19 Civ. 6533, Cmplt. (Dkt. No. 2) at 13)

In 2010, Malloy "sought nomination for the [Mission's] Annual Innovation in the Use of Technology Award for her well-documented contributions in the overall efficiency and effectiveness of managing the Research Unit's records electronically."  (Id. at 11-12)  Although a colleague nominated Malloy for the award, "several [Mission] Management officials" prevented the nomination from proceeding "to the Chief of the Mission" for approval.  (Id. at 12)

In October 2011, Malloy learned that two of her younger colleagues were promoted to GG-13.  The Court understands Malloy to be referencing Harry Ting – who is Asian – and Andrea Donohue – who is Caucasian.  (Id. at 5, 23; No. 19 Civ. 6533, Pltf. Opp. (Dkt. No. 26-1) at 14)  Malloy trained Ting and Donohue, and the three performed substantially the same duties.  (No. 19 Civ. 6533, Pltf. Opp. (Dkt. No. 26-1) at 14)  Malloy alleges that she was "more qualified" than Ting and Donohue for the promotion.  (Id. at 15)

Malloy's 2011 annual review states that she "maintains productive relationships with her co-workers and colleagues and strives to make the Research Unit a productive and attractive place to work."  (No. 19 Civ. 6533, Cmplt. (Dkt. No. 2) at 13-14)  The review also notes that "Malloy has consistently demonstrated above-average performance."  (Id.)

On May 29, 2012, Malloy complained to her "second-line" supervisor, Information Management Officer Christopher Pinzino, about "unfair treatment" and a "hostile work environment."[8]  (Id. at 13)

---

[8]  The record does not reveal the specific nature of Malloy's complaints to Pinzino.

In July 2012, Malloy met with Pinzino for a mandatory mid-year performance review.  (Id.)  During this meeting, Pinzino "made no reference to any issues with [Malloy's] performance or behavior."  (Id.)

On August 6, 2012, Dr. Natoschia Scruggs, who is African-American, became the chief of the Mission's Research Unit and Malloy's "first-line supervisor."  (No. 19 Civ. 6533, Cmplt. (Dkt. No. 2) at 14, 16; No. 18 Civ. 4756, EEO Cmplt. (Dkt. No. 29) at 125)  Malloy told "Scruggs that she had been working in [a] strained environment . . . and, as the only African-American in the Research Unit[,] that she had reported this to Mr. Pinzino."  (No. 18 Civ. 4756, Pltf. Opp. (Dkt. No. 37) at 25)  Malloy "hoped that her work environment would improve" under Scruggs, but "this was not the case."  (Id.)  "Within weeks Ms. Scruggs began her campaign of harassment and discriminatory treatment" of Malloy.  (19 Civ. 6533, Cmplt. (Dkt. No. 2) at 14)  Malloy believes that Scruggs mistreated her in order to obtain "'buy in' from . . . colleagues who [had previously] expressed extreme animus" towards Malloy.  (No. 18 Civ. 4756, Sept. 9, 2013 EEO Cmplt. (Dkt. No. 29-11) at 5)

In August 2012, Malloy requested leave because she was recovering from surgery.  "Scruggs responded to [Malloy's] . . . e-mail request for medical leave [by] stating that if [she] did not come in to do her assigned duties, they would not get done[,] because 'none' of her colleagues wanted to help her."  (19 Civ. 6533, Cmplt. (Dkt. No. 2) at 14; No. 18 Civ. 4756, Pltf. Opp (Dkt. No. 37) at 25)

In September 2012, Scruggs issued Malloy a "Leave Restriction" letter that made it difficult for her to take leave.  (No. 18 Civ. 4756, Pltf. Opp. (Dkt. No. 37) at 25, 114)

On September 13, 2012, Malloy reviewed her mid-year performance evaluation before it was transmitted to Scruggs for approval.  (19 Civ. 6533, Cmplt. (Dkt. No. 2) at 14; No.

18 Civ. 4756, Pltf. Opp. (Dkt. No. 37) at 24; No. 19 Civ. 6533, Dec. 7, 2012 EEO Cmplt. (Dkt. No. 23-1) at 5)  At that time, the mid-year performance evaluation rated Malloy "fully successful" across all components.  (No. 19 Civ. 6533, Cmplt. (Dkt. No. 2) at 14)

On October 9, 2012, Malloy filed an "informal grievance" with Management Counselor Brian Heath, which included "a complaint about [how Malloy was] treat[ed] during an office incident involving both Chris Pinzino and Natoschia Scruggs."[9]  (Id.)

On October 10, 2012, Malloy learned that her rating for "Participation and Teamwork" in the mid-year performance review had been changed from "fully successful" to "not successful."  (Id. at 14-15)  In a meeting that day with Pinzino, Scruggs, and Supervisory Human Resources Officer Gary Heinrich, Malloy was told that her rating was changed because "'some' of her colleagues found her 'intimidating' and 'menacing.'"  (Id. at 15)  When Malloy asked for more details, Scruggs said that the complaints were based on general "perceptions." (Id.)  Malloy's supervisors recommended that she take anger management courses to improve her performance at work.  (Id.; see also No. 18 Civ. 4756, Pltf. Opp. (Dkt. No. 37) at 27)

In October or November 2012, Pinzino issued a letter reprimanding Malloy for "excessive personal phone calls."  (No. 19 Civ. 6533, Cmplt. (Dkt. No. 2) at 15; 18 Civ. 4756, Pltf. Opp. (Dkt. No. 37) at 27)  Malloy complains that phone calls she made for the Mission's "Black History Month program" – which she organized each year – were "deemed 'personal' calls."  (19 Civ. 6533, Pltf. Opp. (Dkt. No. 26-1) at 16)  Malloy further alleges that Pinzino's letter contains significant errors, and that he had no authority to issue the letter.  (No. 19 Civ. 6533, Cmplt. (Dkt. No. 2) at 15-16)

---

[9]  The record does not disclose any further details concerning the incident about which Malloy complained.

On November 9, 2012, Malloy submitted an "informal grievance" to Heath

concerning Pinzino's letter of reprimand.  (Id. at 15)  On November 24, 2012, Malloy filed

another "informal grievance" with Ambassador Rosemary DiCarlo concerning the same letter.

(Id.)  According to Plaintiff, Pinzino's letter was later declared "invalid."  (18 Civ. 4756, Pltf.

Opp. (Dkt. No. 37) at 26 n.4)

In December 2012, Malloy received her annual evaluation.  (No. 19 Civ. 6533,

Cmplt. (Dkt. No. 2) at 16)  She was rated "not successful."  (Id.)  The "not successful" rating

resulted from poor scores Malloy had received on the "Participation and Teamwork" and

"Interpersonal Communication" components of her evaluation.  (Id.)

On December 7, 2012, Malloy filed an EEO complaint alleging that she had been

discriminated against based on her race.  Malloy cited (1) the failure to nominate her for the

Annual Innovation in the Use of Technology Award in 2010; (2) the promotion of her colleagues

in October 2011; (3) her 2012 negative performance review; and (4) Pinzino's 2012 letter of

reprimand.  (No. 19 Civ. 6533, Dec. 7, 2012 EEO Cmplt. (Dkt. No. 23-1) at 3, 5)  Malloy also

claimed that these alleged adverse actions constituted retaliation for the grievance that she had

filed with Heath on October 9, 2012.[10]  (Id.)

---

[10]  The State Department's EEO office dismissed Malloy's complaint on May 29, 2013, finding
that the first two claims were untimely and that the remaining claims lacked merit.  (No. 19 Civ.
6533, Dec. 18, 2013 EEOC Decision (Dkt. No. 23-2) at 2)  Malloy appealed to the U.S. Equal
Opportunity Commission (the "EEOC").  (Id.)  On December 18, 2013, the EEOC rejected the
State Department EEO Office's findings as to the first two claims, concluding that equitable
estoppel tolled the deadline for Malloy to pursue these claims.  The EEOC remanded as to these
claims.  (Id. at 7)  The EEOC affirmed the EEO Office's determinations as to Malloy's
remaining claims and advised Malloy that any civil action concerning these claims had to be
filed within 90 days.  (Id. at 7-8)  Malloy did not file any action concerning these claims until she
commenced the 2018 Action.

On January 28, 2013, Malloy filed an "informal grievance."[11]  (19 Civ. 6533, Cmplt. (Dkt. No. 2) at 16)  The grievance was premised on Scruggs having lodged an "AWOL charge" against Malloy, accusing her of being absent without leave while Malloy was "in the restroom addressing her medical needs."  (Id.)

On February 1, 2013, Malloy received notice of a proposed 14-day suspension without pay for "failure to follow policy, disruptive behavior and insolence."  (Id.; No. 19 Civ. 6533, May 16, 2013 Ltr. (Dkt. No. 26-2) at 3)  Among other things, the notice charged that Malloy had arrived late for work between January and August 2012, repeatedly took personal calls between January and November 2012, and called an intern a "liar" at a meeting.  (No. 19 Civ. 6533, May 16, 2013 Ltr. (Dkt. No. 26-2))

In March 2013, Malloy was informed that she would receive a reasonable accommodation for her "documented disability associated with her uterine fibroids/anemia." (No. 18 Civ. 4756, Cmplt. (Dkt. No. 1) at 6; No. 19 Civ. 6533, Cmplt. (Dkt. No. 1) at 11, 16-17) The accommodation included "[b]athroom breaks (to afford enough time to address [her] needs)."  (No. 18 Civ. 4756, Mar. 21, 2013 Email (Dkt. No. 37) at 56-57)  Malloy claims, however, that the accommodation was "never implemented by . . . management."  (No. 19 Civ. 6533, Cmplt. (Dkt. No. 2) at 11; No. 18 Civ. 4756, Pltf. Opp. (Dkt. No. 37) at 6)  And later in March 2013, Scruggs "refused to excuse [Malloy] during a meeting to use the restroom," and asked Malloy "several times" whether she needed to "'call security'" about her behavior.  (No. 19 Civ. 6533, Cmplt. (Dkt. No. 2) at 17)  After Malloy's reasonable accommodation request was granted, Scruggs required all employees to sign in and out before using the restroom.  (No. 18 Civ. 4756, Pltf. Opp. (Dkt. No. 37) at 27)  In response, Malloy requested "[Mission]

_____

[11]  The Complaint does not state with whom the grievance was filed.

management review" of Scruggs' action, complaining "that she was the victim of harassment and discriminatory treatment by . . . Scruggs."  (No. 19 Civ. 6533, Cmplt. (Dkt. No. 2) at 17)

On May 16, 2013, Deputy Assistant Secretary for Human Resources Marcia S. Bernicat "mitigate[d]" Malloy's proposed 14-day suspension to 10 days.  (Id.)  Malloy filed a grievance concerning the 10-day suspension, claiming that it constituted "discrimination and retaliation."[12]  (Id.)

In June 2013, Malloy received a negative mid-year performance review.  (Id.) That review cited "the March 2013 restroom incident as an example of [Malloy's] 'behavior' issues."  (Id.)  In October 2013, Malloy was denied a "within-grade-increase . . . based on her 2012 Annual Rating."  (Id. at 18)

On September 9, 2013, Malloy filed an EEO complaint alleging race and disability discrimination.  (No. 18 Civ. 4756, EEO Cmplt. (Dkt. No. 29-11) at 2)  Malloy complained that (1) Scruggs and a Caucasian colleague had falsely accused her of providing "misleading" information in response to a research request in March 2013; (2) Scruggs had threatened to call security when Malloy tried to excuse herself to use the restroom in March 2013; and (3) the mid-year review that Malloy received in June 2013 was unfair.  (Id. at 3-4)  In her EEO complaint, Malloy asserts that "[w]hile it is difficult for some to believe that Dr. Scruggs who is also an African-American could discriminate against me based on race (color), it is an undeniable fact not only in the way she treats and relates to me, but the other African-American (Thomas Lang) and Hispanic-American (Fatima Hernandez) in the office."  (Id. at 5) Malloy claims that Scruggs "routinely refuse[s] to speak to" her, Lang, and Hernandez.   (Id.)

---

[12]  The record does not reveal the outcome of the grievance.

Malloy also complains that she, Lang, and Hernandez have "heavier work loads than . . . other employees." (Id.)

In a March 28, 2014 letter to Deputy Assistant Secretary Marcias Bemicat, Heath requests that Malloy's employment be terminated. (No. 18 Civ. 4756, Mar. 28, 2014 Ltr. (Dkt. No. 37) at 101) Heath states that Malloy's "history of misconduct is evident in [her] personnel file, which documents a consistent pattern of insubordination, misrepresentation, disruption, intimidation, insolence, and unfounded complaints against her colleagues, past and current supervisors, and upper-level management." (Id.) Malloy claims that Heath sought her termination because of her "allegations of discriminatory harassment based on race, color and disability." (Id. at 14)

On June 20, 2014, Malloy received a "proposal to remove her from her position," and she was placed on administrative leave at that time. (No. 18 Civ. 4756, Cmplt. (Dkt. No. 1) at 5; No. 18 Civ. 4756, Pltf. Opp. (Dkt. No. 37) at 13, 90-99) The notice accuses Malloy of (1) "[u]nprofessional behavior," in that she "creat[ed] written records that . . . distorted impressions of interactions between [her] and [her] supervisor, Natoschia Scruggs,"[13] and (2) "Disruptive Behavior" in that she, among other things, falsely accused Scruggs of banning Malloy from an office area unless she was accompanied by security, which "caused [Human Resources Officer Gary] Heinrich to devote time to investigating [Malloy's] unfounded claim." (No. 18 Civ. 4756, June 20, 2014 Proposed Removal (Dkt. No. 29-1) at 2, 5, 7)

---

[13] The notice asserts, for example, that Malloy falsely accused Scruggs of not responding to Malloy's request for (1) training, when Scruggs had responded to Malloy's inquiry within an hour; and (2) leave, when Scruggs had verbally approved Malloy's request. (June 20, 2014 Proposed Removal (Dkt. No. 29-1) at 3-4)

On October 6, 2014, Malloy filed an EEO complaint alleging that the proposal to terminate her employment was retaliation for her complaints of discrimination.  (18 Civ. 4756, Oct. 6, 2014 EEO Cmplt. (Dkt. No. 29-6))  Malloy requested, inter alia, reinstatement from administrative leave and a transfer to "another Section or Unit"; "a promotion to GG-13"; and an "[i]ndependent and thorough review/investigation into unfair, discriminatory and retaliatory treatment."  (Id. at 6)

On October 8, 2014, Deputy Assistant Secretary for Human Resources Philippe Lussier "mitigate[d] the proposed removal to a 30-calendar day suspension."  (No. 18 Civ. 4756, Oct. 8, 2014 Decision (Dkt. No. 29-2) at 15)  Malloy was suspended from November 24 to December 23, 2014.[14]  (Id.)

On April 8, 2016, Malloy filed an EEO complaint in which she alleged that her "position was changed . . . from a full grade potential of GG-13 to a full grade potential of . . . G-12."  (18 Civ. 4756, Apr. 8, 2016 EEO Cmplt. (Dkt. No. 29-12) at 3-4)  Malloy alleged that this change was retaliation for her prior complaints of discrimination.  (Id. at 3)  Malloy also complained that although her pay grade was GG-12, she was responsible for training a GG-13 employee.  (Id.)

---

[14]  On December 9, 2014, Malloy appealed her suspension to the Merit Systems Protection Board ("MSPB").  (No. 18 Civ. 4756, MSPB Docket (Dkt. No. 29-10))  On March 3, 2017, an MSPB administrative law judge ("ALJ") denied Malloy's appeal for lack of jurisdiction, concluding that Malloy was not a "covered employee" under the applicable statute, 5 U.S.C. § 7511.  (No. 18 Civ. 4756, MSPB Decision (Dkt. No. 29-8) at 11)  On April 7, 2017, Malloy filed a one-page "petition for review" with the MSPB (No. 18 Civ. 4756, Pet. for Review (Dkt. No. 29-9)), but the MSPB never issued a decision with respect to that filing.  (No. 18 Civ. 4756, MSPB Docket (Dkt. No. 29-10))  On April 28, 2017, the State Department notified Malloy of her right to pursue her complaint through the EEO process (No. 18 Civ. 4756, Apr. 28, 2017 Mission Response (Dkt. No. 37-1) at 53 n.1), and Malloy filed an EEO complaint concerning her suspension on August 2, 2017.  (No. 18 Civ. 4756, Aug. 2, 2017 EEO Cmplt. (Dkt. No. 1) at 21)

At some point in 2016, Malloy filed a request for a reasonable accommodation for "light and noise sensitivity," which resulted from a concussion that she sustained in an April 2015 car accident.  (No. 18 Civ. 4756, Pltf. Opp. (Dkt. No. 37) at 44)  Malloy contends that her "request to work from her office where she could turn her lights off was initially denied and [she] was required to work in a common area."[15]  (Id.)  Malloy was given a "screen protector for her computer due to light sensitivity," but it was the "wrong size."  (Id. at 44-45)

In August 2016, Scruggs "was working in the Research Unit common area when [Scruggs] turned the television on to a loud volume and then went in her office and shut the door[,] stating that [Malloy] had to leave the television on."  (Id. at 44-45)  Malloy felt "a migraine mounting" and the noise from the television added to her "discomfort," but Scruggs insisted on keeping the television on – even after Malloy complained to Scruggs about her migraine.  (Id. at 164-65)

In December 2016, Malloy requested an "amendment and/or change of her position description."  (No. 18 Civ. 4756, Cmplt. (Dkt. No. 1) at 25)  Malloy's request was not addressed.  (Id.)  Although Malloy was a GG-12 employee, she was "required to do [the] work of [Harry Ting,] who was a GG-13."  (Id. at 6)  Malloy claims that "Scruggs . . . continuously created false perceptions and exaggerated the volume and complexity of . . . Ting's work assignments (thereby validating . . . Ting's current grade level/promotion) while devaluing the volume and complexity of the work [Malloy] perform[ed] (at a lower grade and pay)."  (Id. at 29)

---

[15]  It is not clear from the record whether Malloy's request for an accommodation was later granted.

In late 2016, Malloy learned that Ting had been allowed to move to another floor, in order to create distance between him and Malloy.  (No. 18 Civ. 4756, Cmplt. (Dkt. No. 1) at 29; No. 18 Civ. 4756, Pltf. Opp. (Dkt. No. 37) at 40 (noting that "Ting was moved to the 12th floor"))  Beginning in July 2016, Ting had emailed complaints about Malloy to the human resources department.  (No. 18 Civ. 4756, Pltf. Opp. (Dkt. No. 37) at 36; No. 18 Civ. 4756 Cmplt. (Dkt. No. 1) at 25)  For example, in a July 7, 2016 email, Ting complained that Malloy would "lash[] out" whenever he asked her to perform a simple task.  (No. 18 Civ. 4756, Pltf. Opp. (Dkt. No. 37) at 36)  In a September 16, 2016 email, Ting complained that Malloy lingered outside an office for 30 minutes in order to overhear his meeting with Scruggs.  (Id. at 39)  Ting asserted that Malloy was "out of control" and that "[s]omething needs to be done."  (Id.)

Malloy claims that the Mission's management encouraged Ting to make false complaints about Malloy in order to portray her as "odd, bizarre, or hostile."  (Id.)  According to Malloy, the State Department's EEO office acknowledged that Ting was "bullying" her, but did not address her complaints about his conduct.  (Id. at 31-32)

In March 2017, Malloy asked to move to "another office" to escape a "hostile work environment."  (No. 18 Civ. 4756, Cmplt. (Dkt. No. 1) at 6)  Malloy's request was denied. (No. 18 Civ. 4756, Pltf. Opp. (Dkt. No. 37) at 48)

In support of her hostile work environment claim in the instant case, Malloy asserts that she was subjected to "harassment complaints, reassignment tasks, non-promotion, excessive monitoring and scrutiny."  (No. 18 Civ. 4756, Cmplt. (Dkt. No. 1) at 25)  Malloy also alleges – without specifying a timeframe – that Scruggs engaged in "name-calling" and "berat[ed] [Malloy] publicly in front of her colleagues" and in private, including by calling Malloy a "loser."  (No. 18 Civ. 4756, Pltf. Opp (Dkt. No. 37) at 29)  According to Malloy,

Scruggs told Malloy to communicate with her by email rather than verbally, but Scruggs then ignored Malloy's email messages.  (Id. at 29-30)  If Malloy was working late, Scruggs would ask, "why are you still here?" and instruct Malloy to send an email to the human resources department explaining the reason for her presence in the office.  (Id. at 30)

On March 27, 2017, Malloy filed another EEO complaint alleging discrimination and retaliation on the basis of her race.  (No. 18 Civ. 4756, Mar. 27, 2017 EEO Cmplt. (Dkt. No. 29-5))  Among other things, Malloy complained about (1) her negative 2016 performance evaluation, which allegedly made her ineligible for a promotion; (2) false statements made about her by colleagues and supervisors; (3) the human resources department and Mission management ignoring her complaints of discrimination and suggesting that Malloy "'just quit' if she feels she's being treated unfairly, while other non-African-American employees alleging harassment are protected and supported."  (Id. at 3-4)

On May 2, 2017, Scruggs assigned "superfluous and voluminous" recordkeeping tasks to Malloy in retaliation for her complaints of discrimination.  (No. 18 Civ. 4756, Cmplt. (Dkt. No. 1) at 25)

On May 31, 2017, Malloy received another "proposal to remove her from her position."  (Id. at 6; No. 18 Civ. 4756, May 31, 2017 Proposed Removal (Dkt. No. 29-3))  This notice accuses Malloy of "Unprofessional Behavior," in that she, among other things, (1) had accused Scruggs of not responding to her leave request in May 2016, when Scruggs had in fact granted Malloy's leave request (No. 18 Civ. 4756, May 31, 2017 Proposed Removal (Dkt. No. 29-3) at 2-4); (2) not responded to Scruggs's July 2016 request for an update on a project that Malloy was working on (id. at 4-5); and (3) falsely accused Scruggs of directing Malloy to clean up Halloween decorations instead of finishing a work assignment.  (Id. at 6-9)  This notice also

accuses Malloy of "Disruptive Behavior" in that she, among other things, falsely asserted that Scruggs had refused to turn off a television after Malloy complained about a migraine in August 2016.  (Id. at 9-11)

On September 25, 2017, Deputy Assistant Secretary of the Bureau of Human Resources Bruce Williamson issued a letter sustaining the penalty of removal.  (No. 18 Civ. 4756, Sept. 25, 2017 Ltr. (Dkt. No. 29-4) at 2, 23)  In the removal letter, Williamson wrote: "You have engaged in unprofessional and disruptive behavior at [the Mission] over a period of approximately five years.  When viewed as a whole, your misconduct was very serious, as it has damaged morale in the workplace and caused others to feel disrespected and tormented.  It has disrupted the proficient operation of [the Mission], as time and resources have been diverted to address your engagement in repeated instances of misconduct."  (Id. at 23)

## II.   **PROCEDURAL HISTORY**

On May 30, 2018, Malloy commenced the 2018 Action against defendant Secretary Pompeo asserting claims of employment discrimination and retaliation on the basis of race, sex, age, and disability in violation of Title VII, 42 U.S.C. § 1981, the ADEA, the Rehabilitation Act, the ADA, the FMLA, the NYSHRL, and the NYCHRL.  (No. 18 Civ. 4756, Cmplt. (Dkt. No. 1))  On November 28, 2018, Secretary Pompeo moved for partial dismissal of the Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  (No. 18 Civ. 4756, Def. Br. (Dkt. No. 27))

On July 11, 2019, Malloy commenced the 2019 Action against defendants Secretary Pompeo and U.S. Department of State asserting additional claims of employment discrimination and retaliation on the basis of race and disability in violation of Title VII, 42 U.S.C. § 1981, the Rehabilitation Act, the ADA, and the FMLA.  (No. 19 Civ. 6533, Cmplt.

(Dkt. No. 2))  On December 17, 2019, this Court consolidated the 2018 Action and the 2019

Action.  (No. 18 Civ. 4756, Order (Dkt. No. 47))  On January 10, 2020, Defendants moved for

partial dismissal of the 2019 Action under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  (No. 19 Civ.

6533, Def. Br. (Dkt. No. 24))

## DISCUSSION

## I.    STANDARDS OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "factual

allegations sufficient 'to raise a right to relief above the speculative level.'"  ATSI Commc'ns,

Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly,

550 U.S. 544, 555 (2007)).  In other words, the complaint must allege "'enough facts to state a

claim to relief that is plausible on its face.'"  Starr v. Sony BMG Music Entm't, 592 F.3d 314,

321 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In applying this standard, a court accepts as true all well-pled factual allegations

but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a

cause of action."  Id.  Moreover, a court will give "no effect to legal conclusions couched as

factual allegations."  Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121

(2d Cir. 2007) (citing Twombly, 550 U.S. at 555).  Where a court can infer no more than the

mere possibility of misconduct from the factual averments – in other words, where the well-pled

allegations of a complaint have not "nudged [plaintiff's] claims across the line from conceivable

to plausible" – dismissal is appropriate.  Twombly, 550 U.S. at 570.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco, 622 F.3d at 111 (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. Cnty. of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)).  "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." DiFolco, 622 F.3d at 111 (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)). For a document to be integral to a complaint, "the plaintiff must have (1) 'actual notice' of the extraneous information and (2) 'relied upon th[e] document[ ] in framing the complaint.'" DeLuca v. AssetIT Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (first alteration in original) (quoting Chambers, 282 F.3d at 153).

A district court may also "rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998); see also Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004) ("[W]e may also look to public records . . . in deciding a motion to dismiss.").  "In the motion to dismiss context, . . . a court should generally take judicial notice 'to determine what statements [the documents] contain[ ] . . . [but] not for the truth of the matters asserted.'" Schubert v. City of Rye, 775 F. Supp. 2d 689, 698 (S.D.N.Y. 2011) (alterations in original) (quoting Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991)).

In considering a Rule 12(b)(1) motion, a court "must accept as true all material factual allegations in the complaint." J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d

Cir. 2004).  The court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but . . . may not rely on conclusory or hearsay statements contained in the affidavits." Id.; see also Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008), aff'd, 561 U.S. 247 (2010) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings." (citing Makarova, 201 F.3d at 113)).  In resolving a Rule 12(b)(1) motion, a court may also "consider 'matters of which judicial notice may be taken.'" Greenblatt v. Gluck, No. 03 Civ. 597 RWS, 2003 WL 1344953, at *1 n.1 (S.D.N.Y. Mar. 19, 2003) (quoting Hertz Corp. v. City of New York, 1 F.3d 121, 125 (2d Cir. 1993)).  "Courts routinely take judicial notice of filings and determinations in EEOC investigations." Evans v. Epimed Int'l, No. 19-CV-805 (MAD) (CFH), 2020 WL 2497145, at *1 (N.D.N.Y. May 14, 2020).

"[T]he submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotations and alterations omitted); see also Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (noting that pro se litigants "generally are entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest'" (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996))).  That said, a pro se plaintiff must still plead enough facts to state a claim to relief that is plausible on its face.  See Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011).  Although courts are "obligated to draw the most favorable inferences" from a complaint, they "cannot invent factual allegations that [plaintiff] has not pled." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).

II.     **ANALYSIS**

    A.      **NYSHRL, NYCHRL, ADA, Section 1981, and FMLA Claims**

            Malloy alleges claims under the NYSHRL and the NYCHRL.  (No. 18 Civ. 4756,

Cmplt. (Dkt. No. 1) at 4)  Given her status as a federal employee, however, Malloy cannot assert

claims against Defendants under these state and municipal laws.  See, e.g., Adeniji v. U.S. Dep't

of Commerce/Census Bureau-NY Reg'l Office/Hannah Zimmerman, No. 1:19-CV-8796 (CM),

2019 WL 7067057, at *2 (S.D.N.Y. Dec. 23, 2019) ("Plaintiff cannot assert claims of race

discrimination or retaliation under the NYSHRL or NYCHRL that arise from his federal

employment. . . .") (citing Brown v. GSA, 425 U.S. 820, 828-29 (1976)); Wilder v. Shulkin, No.

14-CV-10072 (RJS), 2017 WL 2889507, at *4 (S.D.N.Y. June 30, 2017) ("Title VII is 'the

exclusive remed[y] available to federal employees who allege employment discrimination' on

the basis of gender, color, or race.") (quoting Lucenti v. Potter, 432 F. Supp. 2d 347, 356

(S.D.N.Y. 2006)); McManamon v. Shinseki, No. 11 CIV 7610 PAE, 2013 WL 3466863, at *2

(S.D.N.Y. July 10, 2013) (noting that "NYSHRL[] and NYCHRL claims [were dismissed] with

prejudice because those statutes do not provide relief for disability or age discrimination in an

action brought by a federal employee against a federal agency"); Chmiel v. Potter, No. 09-CV-

555 RJA, 2010 WL 5904384, at *5 (W.D.N.Y. Dec. 7, 2010), report and recommendation

adopted, 2011 WL 810159 (W.D.N.Y. Mar. 2, 2011) ("[T]he Rehabilitation Act provides the

exclusive remedy for federal employees alleging discrimination on the basis of disability. . . .

[A]ny state law claims for similar relief are barred.").

            Malloy concedes that her NYSHRL and NYCHRL claims are not viable.  (No. 18

Civ. 4756, Pltf. Opp. (Dkt. No. 37) at 7 ("Plaintiff does concede that some of her claims under

state and municipal law are barred. . . ."))

Accordingly, Malloy's claims under the NYSHRL and NYCHRL will be dismissed.

Malloy has also brought claims under the ADA, 42 U.S.C. § 1981, and the FMLA.  (No. 18 Civ. 4756, Cmplt. (Dkt. No. 1) at 4; 19 Civ. 6533, Cmplt. (Dkt. No. 2) at 4)  As a federal employee, Malloy cannot obtain relief against Defendants under these statutes.  The ADA "expressly excludes the federal government from coverage." Johnson v. Dep't Of Interior, 189 F.3d 461, 451 (2d Cir. 1999) (citing 42 U.S.C. § 12111(5)(B)(i)); see also Chmiel, 2010 WL 5904384, at *5 ("[T]he Rehabilitation Act provides the exclusive remedy for federal employees alleging discrimination on the basis of disability. . . .").  Section 1981 is "inapplicable to the federal government." Murray v. Lakeland Cent. Sch. Dist. Bd. of Educ., No. 16-CV-6795 (KMK), 2017 WL 4286658, at *7 (S.D.N.Y. Sept. 26, 2017).  And, although "the FMLA grants a private right of action to an employee in the private sector who alleges violation of FMLA rights, . . . the FMLA does not afford such a right of action to a federal employee." Beauchat v. Mineta, No. 03 Civ. 3196 (DRH)(ETB), 2006 WL 2711608, at *9 (E.D.N.Y. Sept. 21, 2006), aff'd, 257 F. App'x 463 (2d Cir. 2007).  Malloy's claims under the ADA, Section 1981, and FMLA will therefore be dismissed.

### B.    Timeliness and Administrative Exhaustion

#### 1.    Applicable Law

Malloy's remaining claims are brought under Title VII, the ADEA, and the Rehabilitation Act.  (No. 18 Civ. 4756, Cmplt. (Dkt. No. 1) at 2-4); No. 19 Civ. 6533, Cmplt. (Dkt. No. 2) at 3-4)  "Before bringing an action in a district court for discrimination under [these statutes], a federal employee must first exhaust available administrative remedies." Hendry v. Donahoe, 931 F. Supp. 2d 441, 447 (E.D.N.Y. 2013).  "'Timely exhaustion of administrative

remedies requires that a federal employee comply with applicable EEOC regulations.'" <u>Wilder v. United States Dep't of Veterans Affairs</u>, 175 F. Supp. 3d 82, 88 (S.D.N.Y. 2016) (quoting <u>Lucenti</u>, 432 F. Supp. 2d at 356). "Under these regulations, 'a government employee seeking to bring an employment discrimination claim must first seek informal . . . counseling within his agency, and then file a formal complaint with the agency.'" <u>Id.</u> (quoting <u>Young v. U.S. Dep't of Homeland Sec.</u>, No. 10-CV-9571 (RJS), 2011 WL 6057849, at *1 (S.D.N.Y. Dec. 5, 2011)).

> Pursuant to EEOC regulations, "prior to filing suit," a "federal employee" must:
>
> (1) consult with a counselor at the relevant agency's Equal Employment Office ("EEO") within 45 days of the alleged discriminatory act, and, if the matter is not resolved after a mandatory counseling period,
>
> (2) file a formal written administrative complaint ("EEO complaint") within 15 days of receipt of the EEO counselor's notice of final interview and right to file a formal complaint ("EEO notice").
>
> The employee may then file a civil action (i) within 90 days of notice of a final agency decision on his or her EEO complaint, or (ii) after 180 days from the filing of the EEO complaint if the agency has not yet rendered a decision.

<u>Id.</u> at 88-89 (quoting <u>Mathirampuzha v. Potter</u>, 548 F.3d 70, 73-74 (2d Cir. 2008)).

As an alternative to filing a civil action immediately after an EEO complaint has been denied, the "claimant may, but is not required to, appeal the agency decision to the EEOC." <u>Gager v. Nicholson</u>, No. 04 Civ. 3410 (DAB) (FM), 2005 WL 2254454, at *3 (S.D.N.Y. July 11, 2005), <u>report and recommendation adopted</u>, 2006 WL 3616965 (S.D.N.Y. Dec. 12, 2006), <u>aff'd sub nom.</u> <u>Gager v. Principi</u>, 300 F. App'x 30 (2d Cir. 2008). "If a claimant pursues such an appeal, he or she must file a civil suit in federal court within 90 days of the EEOC decision, or within 180 days after the filing of the appeal if the EEOC has not issued a final decision by that time." <u>Id.</u> (citing 29 C.F.R. § 1614.408(c)(d)).

"'Only after final agency action may the complainant appeal to the EEOC or file

an action in federal district court.'"  Wilder, 175 F. Supp. 3d at 89 (quoting Young v. U.S. Dep't of Homeland Sec., No. 10 CIV. 9571 RJS, 2011 WL 6057849, at *1 (S.D.N.Y. Dec. 5, 2011)). "These procedural requirements 'are not to be disregarded by courts out of a vague sympathy for particular litigants,'" including pro se litigants.  Dawson v. Long, No. 16-CV-1608 (GBD) (RWL), 2018 WL 5914859, at *6 (S.D.N.Y. Aug. 20, 2018), report and recommendation adopted, 2018 WL 4519199 (S.D.N.Y. Sept. 20, 2018) (quoting Baldwin County Welcome Center v. Brown, 466 U.S. 147, 152 (1994)).

"[F]or the court to consider a particular claim of alleged discrimination, it must have been either explicitly raised during the EEO process or be 'reasonably related' to claims that were."  Hodges v. Attorney Gen. of U.S., 976 F. Supp. 2d 480, 490 (S.D.N.Y. 2013) (quoting Butts v. City of New York Dep't of Hous., Pres. & Dev., 990 F.2d 1397, 1401-03 (2d Cir. 1993), superseded by statute on other grounds as recognized in Hawkins v. 1115 Legal Serv. Care, 165 F.3d 684 (2d Cir. 1998)).  "A claim of alleged discrimination is 'reasonably related' to a claim raised during the EEO process when:  '(1) the claim would fall within the reasonably expected scope of an EEO investigation of the charges of discrimination; (2) it alleges retaliation for filing the EEO charge; or (3) the plaintiff 'alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEO charge.'"  Atencio v. U.S. Postal Serv., No. 1:14-CV-7929-GHW, 2015 WL 7308664, at *6 (S.D.N.Y. Nov. 19, 2015) (quoting Alfano v. Costello, 294 F.3d 365, 381 (2d Cir. 2002)) (alterations omitted).

2.      **Application**

Defendants argue that several of Malloy's claims must be dismissed for untimeliness or for failure to exhaust administrative remedies.  (18 Civ. 4756, Def. Br. (Dkt. No. 27) at 18-23; 19 Civ. 6533, Def. Br. (Dkt. No. 24) at 16-18)

### a.      2012 Negative Performance Review and Letter of Reprimand

Defendants argue that claims based on Malloy's 2012 annual performance review and 2012 letter of reprimand for personal phone calls are untimely.  (No. 19-cv-06533, Def. Br. (Dkt. No. 24) at 18)  Malloy complained about the 2012 performance review and the 2012 letter of reprimand in her December 7, 2012 EEO complaint.  (No. 19 Civ. 6533, Dec. 7, 2020 EEO Cmplt. (Dkt. No. 23-1) at 5, 7)  After the State Department's EEO office dismissed her complaint, Malloy appealed to the EEOC.  (No. 19 Civ. 6533, Dec. 18, 2013 EEOC Decision (Dkt. No. 23-2))  On December 18, 2013, the EEOC issued a decision affirming the dismissal of Malloy's claims based on the 2012 performance review and the 2012 letter of reprimand.  (Id. at 3, 6-7)  Any lawsuit related to these claims had to be filed within 90 days.  (Id. at 8-9) see Gager, 2005 WL 2254454, at *3 (citing 29 C.F.R. § 1614.408(c)(d)).  Because Malloy waited almost five years to commence the 2018 Action, any discrimination or retaliation claims based on Malloy's 2012 performance review and 2012 letter of reprimand are time-barred and will be dismissed.

### b.      Reasonable Accommodation Claims

Defendants argue that Malloy has not exhausted her administrative remedies with respect to any claim that she was denied a reasonable accommodation based on:  (1) the September 2012 "Leave Restriction" letter (No. 18 Civ. 4756, Pltf. Opp. (Dkt. No. 37) at 25, 114); (2) a January 2013 incident in which Scruggs charged Malloy with being AWOL while she was using the restroom to address her medical needs (19 Civ. 6533, Cmplt. (Dkt. No. 2) at 16; 18 Civ. 4756, Pltf. Opp. (Dkt. No. 37) at 6); (3) a failure to implement Malloy's March 2013 reasonable accommodation request (19 Civ. 6533, Cmplt. (Dkt. No. 2) at 11); and (4) a failure to grant Malloy's accommodation request in or about 2016 for "light/noise sensitivity related to

headaches/migraines" (18 Civ. 4756, Cmplt. (Dkt. No. 1) at 5-6; Pltf. Opp. (Dkt. No. 37) at

44).[16]  (19 Civ. 6533, Def. Br. (Dkt. No. 24) at 17-18; 18 Civ. 4756, Def. Br. (Dkt. No. 27) at 19)

Defendants contend that these claims are not mentioned in Malloy's EEO

complaints, and thus have not been exhausted.  (No. 18 Civ. 4756, Def. Br. (Dkt. No. 27) at 19;

No. 19 Civ. 6533, Def. Br. (Dkt. No. 24) at 17-18)

In her September 9, 2013 EEO complaint, however, Malloy alleges that Scruggs

threatened to call security when Malloy asked to use the restroom in March 2013, "show[ing] no

regard for [her] disability or [her] accommodation."  (Sept. 9, 2013 EEO Cmplt. (Dkt. No. 29-

11) at 4)  As relief, Malloy asked that Scruggs receive "sensitivity training regarding Disabilities

in the Workplace."  (Id. at 3)  Accordingly, Defendants' argument that Malloy's EEO complaints

did not address her March 2013 reasonable accommodation request lacks merit.  (No. 19 Civ.

6533, Def. Br. (Dkt. No. 24) at 17-18)

Moreover, any EEO investigation of this incident would have likely revealed that

Scruggs had charged Malloy with being AWOL in January 2013, while she was using the

restroom to address her medical needs.  (19 Civ. 6533, Cmplt. (Dkt. No. 2) at 16; 18 Civ. 4756,

Pltf. Opp. (Dkt. No. 37) at 6)  Because the January 2013 incident is reasonably related to

allegations set forth in the September 9, 2013 EEO complaint, any claim related to that incident

has also been exhausted.  See Jordan v. Forfeiture Support Assocs., 928 F. Supp. 2d 588, 602

(E.D.N.Y. 2013) (noting that the "reasonably related" standard is "'applied generously where a

plaintiff is not represented by counsel'") (quoting Abel v. N.Y.C., Human Res. Admin., No. 10-

---

[16]  Although the Complaint in Malloy's 2018 Action asserts that Malloy made the reasonable accommodation request in "December 2017," the Court assumes that Malloy intends to refer to December 2016; Malloy was removed from her position in September 2017.  (18 Civ. 4756, Cmplt. (Dkt. No. 1) at 6; see also 18 Civ. 4756, Pltf. Opp. (Dkt. No. 37) 44 (stating that Malloy made the accommodation request "in 2016")

CV-295, 2011 WL 812309, at *4 (S.D.N.Y. Mar. 3, 2011)).

As to Malloy's other reasonable accommodation claims, the Court concludes that she has not exhausted her administrative remedies.  Malloy's December 7, 2012 EEO complaint – which was filed months after the "Leave Restriction" letter was issued in September 2012 (19 Civ. 6533, Cmplt. (Dkt. No. 2) at 14) – alleges race discrimination and makes no mention of Malloy's disability.  (No. 19 Civ. 6533, Dec. 7, 2012 EEO Cmplt. (Dkt. No. 23-1)  Accordingly, Malloy has not exhausted her administrative remedies with respect to this letter.  See Shands v. Lakeland Cent. Sch. Dist., No. 15-CV-4260 (KMK), 2017 WL 1194699, at *4 (S.D.N.Y. Mar. 30, 2017) ("'Courts have consistently held that discrimination claims based on . . . disability are not reasonably related to claims based on race or color, and vice versa.'") (quoting Pinkard v. N.Y.C. Dep't of Educ., No. 11-CV-5540, 2012 WL 1592520, at *8 (S.D.N.Y. May 2, 2012)).

Although Malloy appears to allege that Defendants denied her request for a reasonable accommodation based on light and noise sensitivity in 2016 or 2017 (Aug. 2, 2017 EEO Complaint, 18 Civ. 4756, Dkt. No. 1, at 20-23; 18 Civ. 4756, Pltf. Opp. (Dkt. No. 37) at 45), Malloy's April 8, 2016 and March 27, 2017 EEO complaints allege race discrimination and not disability discrimination.  Accordingly, these EEO complaints do not satisfy the exhaustion requirement with respect to Malloy's claims of disability discrimination.  (18 Civ. 4756, Cmplt. (Dkt. No. 1) at 5-6; 18 Civ. 4756, Pltf. Opp. (Dkt. No. 37) at 44) see De La Rosa v. Potter, No. 07 CIV 10704 (GAY), 2009 WL 10677101, at *4 (S.D.N.Y. Nov. 30, 2009), aff'd, 427 F. App'x 28 (2d Cir. 2011) (finding no "relationship between . . . disability discrimination claims and . . . claims of discrimination based upon race and national origin").

Although Malloy checked a box on the form accompanying her August 2, 2017 EEO complaint referencing disability discrimination, none of the factual allegations set forth in

the August 2, 2017 EEO complaint suggest that the Mission failed to accommodate any

disability, much less that the Mission rejected Malloy's request for "a screen protector for her

computer due to light sensitivity."  (No. 18 Civ. 4756, Aug. 2, 2017 EEO Complaint (Dkt. No.

Dkt. No. 1) at 20-23; 18 Civ. 4756, Pltf. Opp. (Dkt. No. 37) at 45)  Indeed, Malloy's August 2,

2017 EEO complaint focuses on 2014 events entirely unrelated to disability discrimination in

2016 or 2017.[17]  (No. 18 Civ. 4756, Aug. 2, 2017 EEO Complaint (Dkt. No. Dkt. No. 1) at 21-

22)  The August 2, 2017 EEO complaint does not suggest that Malloy requested or required a

reasonable accommodation for light and noise sensitivity.  Accordingly, this claim has not been

exhausted, and it will be dismissed.  See Chesnut v. Country Fin. Ins., No. 5:18-CV-404 (MTT),

2019 WL 4345988, at *4 (M.D. Ga. Sept. 12, 2019), reconsideration denied, 2019 WL 4675377

(M.D. Ga. Sept. 25, 2019) ("[Plaintiff's] failure-to-accommodate claim in her complaint alleges

a new act of discrimination that does not reasonably relate to the allegations in her EEOC

charge.").

### c.    Retaliation Claim Based on May 2017
###        Notice of Proposed Removal

Defendants contend that Malloy failed to exhaust her claim that Defendants

retaliated against her by issuing the May 2017 removal proposal, noting that Malloy's August 2,

2017 EEO complaint – which as discussed above addresses primarily 2014 events – does not

mention the proposed removal.  (No. 18 Civ. 4756, Def. Br. (Dkt. No. 27) at 19)  But Malloy

appears to assert that Defendants issued the May 2017 removal proposal in retaliation for her

previous EEO complaints.  (18 Civ. 4756, Pltf. Opp. (Dkt. No. 37) at 49 (alleging that the May

2017 removal proposal was a "reprisal for opposing discriminatory policies and practices"))  The

---

[17]  Malloy filed the August 2, 2017 EEO complaint after the MSPB dismissed her appeal for lack
of jurisdiction in March 2017.  (See supra n.14)

Court concludes that this claim is reasonably related to Malloy's previous EEO complaints and is therefore administratively exhausted.  See Leiva v. City of New York, No. 15-CV-8130 (ALC), 2017 WL 6405662, at *3 (S.D.N.Y. Mar. 10, 2017) ("[G]iven that Plaintiff alleges that Defendants retaliated against her for filing an EEO complaint, the Court finds that the unexhausted claims are reasonably related to the exhausted claim.").

> ### d.      Unequal Terms and Conditions of Employment Claim Based on Rejection of 2017 Office Relocation Request

To the extent that Malloy contends that she was subjected to unequal terms and conditions of employment because Defendants granted Ting's request to switch offices but denied her request, Defendants argue that this claim was not timely exhausted.  (18 Civ. 4756, Def. Br. (Dkt. No. 27) at 19)  According to Defendants, Malloy's request to switch offices was denied on January 13, 2017 (id.), and she did not request EEO counseling concerning this issue until April 20, 2017.  (18 Civ. 4756, Cmplt. (Dkt. No. 1) at 24)  Defendants therefore argue that Malloy did not timely exhaust her administrative remedies.  (18 Civ. 4756, Def. Br. (Dkt. No. 27) at 19)

Malloy alleges, however, that she made "repeated requests to be moved to another office," including in "March 2017" and on "April 5, 2017."  (No. 18 Civ. 4756, Plft. Opp. (Dkt. No. 37) at 40, 50; No. 18 Civ. 4756, Cmplt. (Dkt. No. 1) at 6)  Because the record is not clear as to when Malloy's claim accrued, Defendants' motion to dismiss for untimeliness must be denied. See, e.g., Estate of Leventhal ex rel. Bernstein v. Wells Fargo Bank, No. 14 Civ. 8751, 2015 WL 5660945, at *6 (S.D.N.Y. Sept. 25, 2015) (declining to "decide [on a motion to dismiss] whether plaintiff's claims [were] time-barred because it [was] not clear on the face of the Complaint when . . . those claims began to accrue").

e.    **Hostile Work Environment**

Defendants contend that Malloy's hostile work environment claim cannot be premised on the allegedly false statements made about her, or on her negative 2016 performance review, because Malloy's March 27, 2017 EEO complaint (18 Civ. 4756, Dkt. No. 29-12) – which alleges these incidents – was not timely filed.  (No. 18 Civ. 4756, Def. Br. (Dkt. No. 27) at 19-20)

Claims of a hostile work environment "inherently are of a continuous and ongoing nature."  Watson v. Am. Red Cross Blood Servs., 468 F. Supp. 2d 484, 487 (W.D.N.Y. 2007). Accordingly, in considering such a claim, a court cannot take a "divide-and-conquer approach to the employees' allegations."  Betts v. Costco Wholesale Corp., 558 F.3d 461, 468 (6th Cir. 2009); see Brown v. New York State Dep't of Corr. Servs., 583 F. Supp. 2d 404, 417 (W.D.N.Y. 2008) ("Courts should not carve up the incidents of harassment and then separately analyze each incident. . . .") (internal quotation marks omitted).  Five of Malloy's EEO complaints allege that she was subjected to a hostile work environment, to bullying, or to harassment.  (No. 18 Civ. 4756, Sept. 9, 2013 EEO Cmplt. (Dkt. No. 29-11) at 5; No. 18 Civ. 4756, Oct. 6, 2014 EEO Cmplt. (Dkt. No. 29-6) at 3; No. 18 Civ. 4756, Apr. 8, 2016 EEO Cmplt. (Dkt. No. 29-12) at 4; No. 18 Civ. 4756, Mar. 27, 2017 EEO Cmplt. (Dkt. No. 29-5) at 4; No. 18 Civ. 4756, Aug. 2, 2017 EEO Cmplt. (Dkt. No. 1) at 21)  Even if the March 27, 2017 EEO complaint was untimely, Defendants do not challenge the timeliness of Malloy's other EEO complaints.

For purposes of Malloy's hostile work environment claim, the Court concludes that Malloy's allegations concerning false statements and her 2016 performance review are "continuing allegations of the same hostile and retaliatory environment."  See Refermat v. Lancaster Cent. Sch. Dist., No. 14-CV-0712-RJA-MJR, 2017 WL 10296874, at *6 (W.D.N.Y.

Nov. 14, 2017), report and recommendation adopted, 2018 WL 3640220 (W.D.N.Y. Aug. 1, 2018).  Accordingly, Defendants' motion to dismiss these allegations for failure to exhaust will be denied.

### f.    Failure to Promote

Defendants argue that Malloy's failure to promote claim was not timely exhausted.  (18 Civ. 4756, Def. Br. (Dkt. No. 27) at 19-20, 22-23)  According to Defendants, Malloy's promotion request was denied in December 2016, but she waited until April 20, 2017 to request EEO counseling concerning that claim.  (Id. at 22)  Malloy contends, however, that she requested counseling in December 2016 and never received a response.  (No. 18 Civ. 4756, Cmplt. (Dkt. No. 1) at 25)  Based on the current record, this Court cannot determine when Malloy's failure to promote claim accrued.  See Estate of Leventhal, 2015 WL 5660945, at *6; see also Longi v. Cty. of Suffolk, No. 02-CV-5821 (SJF) (WDW), 2008 WL 858997, at *8 n.11 (E.D.N.Y. Mar. 27, 2008), aff'd sub nom. Longi v. New York, 363 F. App'x 57 (2d Cir. 2010) (motion to dismiss denied where "it could not be ascertained from the face of the amended complaint when those claims accrued").

To the extent that Defendants argue that Malloy's March 2017 EEO complaint is untimely because it was filed more than 15 days after Malloy received a February 13, 2017 EEO notice of her right to file a formal complaint[18] (No. 18 Civ. 4756, Def. Br. (Dkt. No. 27) at 15, 19-20), this argument does not justify dismissal of Malloy's failure to promote claim, because Malloy complains again about "unequal pay and compensation" in her August 2017 EEO

---

[18]  See Wilder, 175 F. Supp. 3d at 88 (noting that EEOC regulations require a federal employee to "file a formal written administrative complaint (EEO complaint) within 15 days of receipt of the EEO counselor's notice of final interview and right to file a formal complaint (EEO notice)") (internal quotation marks omitted).

complaint.  (No. 18 Civ. 4756, Aug. 2, 2017 EEO Cmplt. (Dkt. No. 1) at 22)

g.      **Retaliation Claim Based on Thirty-Day Suspension**

Defendants argue that Malloy's retaliation claim based on her October 2014 thirty-day suspension is barred because Malloy appealed her suspension to the Merit Systems Protection Board and her appeal is still pending.  (No. 18 Civ. 4756, Def. Br. (Dkt. No. 27) at 20-21)

As discussed above (see supra n.14), on March 3, 2017, an MSPB ALJ denied Malloy's appeal for lack of jurisdiction after finding that Malloy was not a "covered employee" under 5 U.S.C. § 7511.  (No. 18 Civ. 4756, MSPB Decision (Dkt. No. 29-8) at 11)  On April 7, 2017, Malloy filed a one-page "petition for review" with the MSPB.  (No. 18 Civ. 4756, Pet. for Review (Dkt. No. 29-9))  To date, no decision on that petition has been issued.  Defendants argue that "'only a final MSPB decision is judicially reviewable,'" and that accordingly any claim premised on the 30-day suspension is unexhausted and must be dismissed.  (No. 18 Civ. 4756, Def. Br. (Dkt. No. 27) at 21 (quoting Jones v. U.S. Dep't of Justice, 111 F. Supp. 3d 25, 31 (D.D.C. 2015))

Although Malloy filed a one-page "petition for review," her petition does not contest the substance of the ALJ's decision.  (No. 18 Civ. 4756, Pet. for Review (Dkt. No. 29-9)) Instead, Malloy's submission raises a notice issue:

> When an individual files a mixed case appeal with the MSPB instead of a mixed case complaint with the EEOC, and the MSPB subsequently dismisses the appeal as non-jurisdictional, the agency [here, the State Department] must inform the individual that s/he may contact an EEO Counselor within forty-five (45) days to raise the discrimination claim(s) and that the filing date of the mixed case appeal will be deemed to be the date the individual initially contacted the EEO Counselor.

(Id.)[19]

On April 28, 2017, the State Department responded to Malloy's petition, observing that she "'does not contest the [decision] dismissing her appeal for lack of jurisdiction.'"  (No. 18 Civ. 4756, Apr. 28, 2017 Mission Response (Dkt. No. 37-1) at 53)  The State Department also notes that it issued a letter to Malloy – that same day – advising her of "her right to contact an EEO counselor and file an EEO complaint regarding her November 2014 suspension."[20]  (Id. at 53 n.1)  In other words, the State Department acknowledges that it was – as Malloy requested – treating her MSPB appeal as a "mixed case" and allowing her to utilize the EEO process, given the MSPB's dismissal of her case for lack of jurisdiction.

Malloy's petition and the State Department's response did not require the MSPB to take any action.  And indeed the MSPB has not addressed Malloy's petition in the more than three and a half years that have passed since she filed it.  The Court concludes that Malloy's claim is not subject to dismissal because her MSPB administrative appeal is still pending.  See Land v. Kaufman, No. 07 Civ. 8070(GEL), 2009 WL 1106780, at *5 (S.D.N.Y. Apr. 23, 2009) ("Exhaustion of administrative remedies is an affirmative defense that defendants bear the burden to raise and prove.").

## C.    Merits of Discrimination Claims

### 1.    Applicable Law

To establish a prima facie case of discrimination under Title VII, the ADEA, or

---

[19]  A "mixed case" is one where "the employee alleges an appealable personnel action and prohibited discrimination."  Parola v. I.R.S., No. 98-CV-7179 JG, 1999 WL 1215557, at *2 (E.D.N.Y. Dec. 15, 1999) (emphasis omitted).

[20]  On August 2, 2017, Malloy filed an EEO complaint in which she alleged that her thirty-day suspension was discriminatory and retaliatory.  (No. 18 Civ. 4756, Aug. 2, 2017 EEO Cmplt. (Dkt. No. 1) at 21)

the Rehabilitation Act, a plaintiff must allege that "(1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination."  Rosen v. N.Y.C. Dep't of Educ., et al., No. 18 CIV. 6670 (AT), 2019 WL 4039958, at *6 (S.D.N.Y. Aug. 27, 2019) (citing Friedman v. Swiss Re Am. Holding Corp., 643 F. App'x 69, 71 (2d Cir. 2016)); Leavenworth v. Potter, No. 3:07-CV-960 (VLB), 2009 WL 378642, at *2 (D. Conn. Feb. 13, 2009) (listing the same prima facie elements for claims under Title VII, the ADEA, and the Rehabilitation Act).  "'[E]ven though establishing a prima facie case of . . . discrimination is not necessary to survive a motion to dismiss, courts do use the standard as a guidepost when determining whether the plaintiff has provided the defendant with fair notice of her claim, as required by the Federal Rules of Civil Procedure.'"  Ndremizara v. Swiss Re Am. Holding Corp., 93 F. Supp. 3d 301, 312 (S.D.N.Y. 2015) (quoting Barker v. UBS AG, No. 09-CV-2084, 2011 WL 283993, at *5 (D. Conn. Jan. 26, 2011)).

2.   **Application**

a.   **Discrimination Claims Premised on 2010 Failure to Nominate for Award and June 2013 Performance Review**

Defendants argue that Malloy cannot base a discrimination claim on either (1) the failure to nominate her for the Annual Innovation in the Use of Technology Award in 2010, or (2) her June 2013 performance review, because neither constitutes an adverse employment action.  (No. 19 Civ. 6533, Def. Br. (Dkt. No. 24) at 19-20)  An adverse employment action is a "'materially adverse change' in the terms and conditions of employment."  Sanders v. N.Y.C. Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004) (citation omitted).  "To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities."  Mathirampuzha v. Potter, 548 F.3d 70, 78 (2d Cir. 2008)

(quoting <u>Sanders</u>, 361 F.3d at 755).  "Examples of such a change include termination of

employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a

material loss of benefits, significantly diminished material responsibilities, or other indices

unique to a particular situation."  <u>Id.</u> (quoting <u>Sanders</u>, 361 F.3d at 755).

      The failure to give an employee an award – by itself – does not constitute an

adverse employment action.  <u>See</u>, <u>e.g.</u>, <u>Hodges v. Sessions</u>, No. 17-CV-4273 (RA), 2018 WL

4232918, at *4 (S.D.N.Y. Sept. 5, 2018) ("[T]he failure to provide Plaintiff with an award clearly

does not qualify as an adverse action."); <u>Ortiz v. Metro. Transportation Auth.</u>, No. 13-CV-1033

(VSB), 2014 WL 11460929, at *10 (S.D.N.Y. Sept. 30, 2014), <u>aff'd sub nom.</u> <u>Ortiz v. Metro.</u>

<u>Transp. Auth.</u>, 615 F. App'x 702 (2d Cir. 2015) (ruling that "the denial of [an] award" was not

"an adverse employment action").  Malloy concedes that the "failure to receive an award may

not completely meet the standard for an adverse action," but she appears to argue that the failure

to <u>nominate</u> her for an award qualifies as an adverse employment action.  (19 Civ. 6533, Pltf.

Opp. (Dkt. No. 26-1) at 13)  Any such argument is not persuasive, because the concrete harm in

either case is being deprived of an award.  Indeed, courts have rejected the notion that the failure

to nominate an employee for an award can constitute an adverse employment action.  <u>See</u>

<u>Bridgeforth v. Jewell</u>, 721 F.3d 661, 663 (D.C. Cir. 2013) (holding that the "[f]ailure to

nominate" an employee for an award is not an adverse action) (citing <u>Douglas v. Donovan</u>, 559

F.3d 549, 553 (D.C. Cir. 2009)).  Accordingly, any discrimination claim premised on the

Defendants' 2010 failure to nominate Malloy for an award will be dismissed.

      As to Malloy's June 2013 performance review, a negative evaluation – by itself –

does not qualify as an adverse employment action for purposes of a discrimination claim.  <u>See</u>,

<u>e.g.</u>, <u>Edwards v. Wilkie</u>, No. 16-CV-8031-LTS-OTW, 2020 WL 2792997, at *10 (S.D.N.Y. May

29, 2020) ("'[n]egative evaluations alone, without any accompanying adverse consequence are
not adverse employment actions'") (quoting <u>Gamble v. Chertoff</u>, No. 04 Civ. 9410 (WHP), 2006
WL 3794290, at *6 (S.D.N.Y. Dec. 27, 2006)); <u>Agnant v. CSC Holdings, LLC</u>, No. 17-CV-3349
(RRM) (SIL), 2020 WL 2615907, at *5 (E.D.N.Y. May 20, 2020) ("Negative performance
evaluations generally do not, on their own, constitute adverse employment actions. . . ."); <u>Gibbs</u>
<u>v. New York State Dep't of Taxation & Fin.</u>, No. 04-CV-905 (FB) (LB), 2009 WL 754307, at *6
(E.D.N.Y. Mar. 20, 2009) ("A negative evaluation can only constitute an 'adverse employment
action' where it leads to tangible employment consequences, such as a loss in pay.").

   To the extent that Malloy alleges that Defendants retaliated against her by issuing
the negative review (No. 19 Civ. 6533, Pltf. Opp. (Dkt. No. 26-1) at 14), Defendants do not seek
dismissal of any such claim.  (No. 19 Civ. 6533, Def. Reply (Dkt. No. 27) at 4)

   Accordingly, to the extent that Malloy's retaliation claim is premised on the June
2013 performance review, that claim survives.  Any discrimination claim premised on the June
2013 performance review will be dismissed.

### b. <u>Failure to Promote</u>

   Defendants argue that Malloy's failure to promote claim should be dismissed for
failure to state a claim.  (No. 19 Civ. 6533, Def. Br. (Dkt. No. 24) at 21)  "A <u>prima facie</u> failure
to promote claim . . . 'requires the plaintiff to demonstrate that 1) he is a member of a protected
class; 2) he applied for promotion to a position for which he was qualified; 3) he was rejected for
the position; and 4) the employer kept the position open and continued to seek applicants.'"
<u>Covington v. TGI Fridays</u>, No. 18- CV-1113 (JFB) (AKT), 2019 WL 2438701, at *6 (E.D.N.Y.
Jan. 7, 2019), <u>report and recommendation adopted</u>, 2019 WL 989752 (E.D.N.Y. Feb. 28, 2019)
(quoting <u>Martinez v. Davis Polk & Wardwell LLP</u>, 208 F. Supp. 3d 480, 485 (E.D.N.Y. 2016)).

Defendants contend that Malloy's failure to promote claim should be dismissed because she has not "allege[d] that the two individuals who were promoted over her were similarly or less well-qualified than her at the time of promotion," or that she "was qualified for the at-issue promotion."  (No. 19 Civ. 6533, Def. Br. (Dkt. No. 24) at 21)

In opposing Defendants' motion to dismiss, Malloy asserts that the two employees promoted over her – Andrea Donohue (who is Caucasian and less than 40 years old) and Harry Ting (who is Asian and less than 40 years old) – "joined the [Mission's] staff after [Malloy] had worked there for nearly 20 years."  (19 Civ. 6533, Pltf. Opp. (Dkt. No. 26-1) at 14; 18 Civ. 4756, Cmplt. (Dkt. No. 1) at 6)  Whereas Donohue and Ting were promoted to GG-13 after five years, it took Malloy 18 years to rise from GG-7 to GG-12, and she was never promoted to GG-13.  (19 Civ. 6533, Pltf. Opp. (Dkt. No. 26-1) at 14-15; 19 Civ. 6533, Cmplt. (Dkt. No. 2) at 5, 19)  As proof that she was qualified for a promotion to GG-13, Malloy alleges that she often covered Donohue and Ting's job duties and performed "essentially the same" work as they did.  (19 Civ. 6533, Pltf. Opp. (Dkt. No. 26-1) at 14; 18 Civ. 4756 (Dkt. No. 1) at 6, 25)  And because Malloy trained Donohue and Ting, she argues that she "was more qualified than" they were for the promotion to GG-13.  (Id. at 15)

Although Malloy has not offered a detailed comparison of her qualifications relative to those of Donohue and Ting, her allegations are sufficient to survive a motion to dismiss.  See Dacier v. Reardon, No. 1:17-CV-418 (LEK) (CFH), 2018 WL 2022610, at *3 (N.D.N.Y. Apr. 27, 2018) (finding that plaintiff plausibly alleged a failure to promote claim where the defendant "hired a Hispanic woman with significantly less experience" and had "hired similarly inexperienced Hispanic women in 2010 and 2012," and "did not promote any non-Hispanic men to senior management positions between 2010 and 2017"); Keaton v. State of

Conn. Dep't of Rehab. Servs., No. 16-CV-1810, 2018 WL 1245728, at *2, 5 (D. Conn. Mar. 9, 2018) (denying motion to dismiss where plaintiff, an African-American woman with 23 years of experience, alleged that defendant promoted two less experienced Caucasian women instead of her).

### c.     May 2013 Ten-Day Suspension

Defendants argue that Malloy's "discrimination claim based on [her] May 2013 10-day suspension fails because [she] has not pleaded facts 'that would give rise to a plausible inference of discrimination.'"  (No. 19 Civ. 6533, Def. Br. (Dkt. No. 24) at 21 (quoting Farsetta v. Dep't of Veterans Affairs, No. 16-CV-6124 (DLC), 2017 WL 3669561, at *6 (S.D.N.Y. Aug. 24, 2017))  In opposition, Malloy asserts that she received the suspension because calls that she "made on behalf of the U.S. Mission for the Black History Month program . . . were deemed 'personal' calls."  (No. 19 Civ. 6533 Pltf. Opp. (Dkt. No. 26-1) at 16)  Malloy also alleges that – while she was suspended in part for calling an intern a liar at a work meeting – Donohue, who is Caucasian, accused Malloy of lying at that same meeting and she was not disciplined.  (Id.) These allegations are sufficient to meet Malloy's "minimal" burden to allege facts that suggest an inference of discrimination.  See Elgalad v. New York City Dep't of Educ., No. 17-CV-4849 (VSB), 2019 WL 4805669, at *4 (S.D.N.Y. Sept. 30, 2019) ("On a motion to dismiss, the burden of showing facts suggesting an inference of discriminatory motivation is 'minimal.'") (quoting Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015)).

### D.     Merits of Retaliation Claims

### 1.     Legal Standard

Retaliation claims under Title VII, the ADEA, and the Rehabilitation Act "are analyzed under the same framework."  Smith v. New York City Dep't of Educ., No. 18 Civ.

8545 (PGG), 2019 WL 6307471, at *11 (S.D.N.Y. Nov. 25, 2019).  To state a prima facie case of retaliation, a plaintiff must allege "that:  (1) he engaged in an activity protected by the [statute]; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity."  Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002).  "[T]he elements of a prima facie case are a useful 'guidepost' in determining whether a plaintiff has alleged a plausible [retaliation] claim."  Wright v. New York State Unified Court Sys., No. 14-CV-4360 (ENV) (VMS), 2016 WL 11472251, at *4 (E.D.N.Y. Feb. 3, 2016).

### 2. Application

#### a. June 2014 and May 2017 Removal Proposals

Defendants argue that any retaliation claim premised on the June 2014 and May 2017 removal proposals must be dismissed, because removal proposals do not constitute adverse action.  (No. 18 Civ. 4756, Def. Br. (Dkt. No. 27) at 24)

"[T]he proper question for a retaliation claim is whether the alleged adverse action to which the plaintiff was subjected could well have dissuaded a reasonable employee in his position from complaining of unlawful discrimination."  Davis-Garett v. Urban Outfitters, Inc., 921 F.3d 30, 44 (2d Cir. 2019) (internal quotation marks and alterations omitted).  "An employer's action can be materially adverse under a retaliation claim 'even if the challenged action does not affect the employee's compensation, terms, conditions, or privileges of employment' and thus would not be materially adverse for purposes of a discrimination claim."  Bowman v. New York State Hous. & Cmty. Renewal, No. 18-CV-11596, 2020 WL 1233701, at *7 (S.D.N.Y. Mar. 13, 2020) (citations omitted).

Here, the June 2014 and May 2017 removal proposals contain detailed allegations

charging Malloy with misconduct.  (No. 18 Civ. 4756, June 20, 2014 Proposal (Dkt. No. 29-1);

No. 18 Civ. 4756, May 31, 2017 Proposal (Dkt. No. 29-3))  Courts have repeatedly held that

"disciplinary charges [of this sort] may constitute an adverse action for purposes of a retaliation

claim."  Olaechea v. City of New York, No. 17-CV-4797 (RA), 2019 WL 4805846, at *9

(S.D.N.Y. Sept. 30, 2019) (citing Monclova v. City of New York, No. 05-CV-3164, 2008 WL

822117, at *7 (E.D.N.Y. Mar. 26, 2008)).  Although courts have "'disagreed as to whether an

investigation into disciplinary charges that does not result in any discipline may be sufficient [to]

constitute an adverse action in the retaliation context,'" (id. (quoting Burgos v. City of New

York, No. 18-CV-1150 (JPO), 2019 WL 1299461, at *8 (S.D.N.Y. Mar. 21, 2019)), here the

removal proposals led to discipline:  Malloy received a thirty-day suspension as a result of the

June 2014 removal proposal, and she was terminated as a result of the May 2017 removal

proposal.  (No. 18 Civ. 4756, Oct. 8, 2014 Decision (Dkt. No. 29-2) at 15; No. 18 Civ. 4756,

Sept. 25, 2017 Ltr. (Dkt. No. 29-4) at 2, 23)  Under these circumstances, the removal proposals

given to Malloy would likely dissuade a reasonable employee in Malloy's position from

complaining of unlawful discrimination.  Accordingly, to the extent that Defendants' motion to

dismiss Malloy's retaliation claims is premised on the notion that the removal proposals do not

constitute adverse action, their motion will be denied.  See e.g., Olaechea, 2019 WL 4805846, at

*9 ("[C]ourts in this Circuit 'have disagreed as to whether an investigation into disciplinary

charges that does not result in any discipline may be sufficient [to] constitute an adverse action in

the retaliation context.' . . . Here, however, the investigation and the charges indisputably led to

[plaintiff] being disciplined:  she was ultimately placed on dismissal probation and required to

forfeit thirty vacation days as a result.  A reasonable juror could very well conclude that this

investigation and the resulting charges would dissuade a reasonable employee from making

discrimination complaints.") (quoting <u>Burgos</u>, 2019 WL 1299461, at *8); <u>Delia v. Donahoe</u>, 862 F. Supp. 2d 196, 223 (E.D.N.Y. 2012) ("disciplinary letters that ultimately led to [a] plaintiff's termination should be viewed as adverse employment actions"; concluding that "the cumulative effect of [a warning letter], plaintiff's June 14, 1999 emergency placement in off-duty status, and the August 10, 1999 Notice of Removal" rise to the level of an adverse employment action) (internal quotation marks omitted) (citing <u>Simon v. N.Y. City Bd. of Educ.</u>, 2006 WL 1210959, at *8 (E.D.N.Y. May 2, 2006)).

### b. <u>Voluminous and Superfluous Tasks</u>

Defendants argue that Malloy's retaliation claims cannot be premised on being assigned "'voluminous' and 'superfluous' tasks," because an increased workload is not an adverse action.  (No. 18 Civ. 4756, Def. Br. (Dkt. No. 27) at 24-25)  Generally, the "assignment of a challenging workload is 'not sufficiently adverse to support either a discrimination or a retaliation claim.'"  <u>Ziyan Shi v. New York Dep't of State, Div. of Licensing Servs.</u>, 393 F. Supp. 3d 329, 338 (S.D.N.Y. 2019) (quoting <u>Osby v. City of New York</u>, 748 Fed. App'x 375, 378 (2d Cir. 2018)).  That said, "'an increase in workload may sometimes be an adverse action for the purposes of a retaliation claim if the increase is heavily disproportionate to other employees similarly situated.'"  <u>Id.</u> (quoting <u>Hiralall v. Sentosacare, LLC</u>, No. 13 Civ. 4437, 2016 WL 1126530, at *13 (S.D.N.Y. Mar. 18, 2016)).

In the EEO complaint in which Malloy complains about being assigned "superfluous, and voluminous work tasks," she asserts that a similarly situated but higher paid colleague performs "essentially the same or less work" than Malloy.  (18 Civ. 4756, Cmplt. (Dkt. No. 1) at 25)  Malloy's overriding complaint is thus not that her workload was "heavily disproportionate" to that of her colleagues, but rather that she was paid less for performing

essentially the same tasks.  (Id.)  Because Malloy has not alleged that the work she was assigned

was "heavily disproportionate" to that of her colleagues, her retaliation claims will be dismissed

to the extent that they are premised on the assertion that she was assigned "superfluous or

voluminous tasks" in May 2017.

      **E.**        **Hostile Work Environment Claim**

             **1.**        **Applicable Law**

"The standard for demonstrating a hostile work environment is the same under

Title VII, . . . the Rehabilitation Act," and the ADEA.  Langella v. Mahopac Cent. Sch. Dist., No.

18-CV-10023 (NSR), 2020 WL 2836760, at *17 (S.D.N.Y. May 31, 2020); see Porter v. Half

Hollow Hills Cent. Sch. Dist., No. 17CV5006 (SJF) (ARL), 2019 WL 4696384, at *5 (E.D.N.Y.

Sept. 26, 2019) (noting that the "same standards" govern hostile work environment claims under

"the ADEA [and] Title VII").

To state a hostile work environment claim,

> a plaintiff must plead facts that would tend to show that the complained of conduct:  (1)
> is objectively severe or pervasive – that is, creates an environment that a reasonable
> person would find hostile or abusive; (2) creates an environment that the plaintiff
> subjectively perceives as hostile or abusive; and (3) creates such an environment because
> of the plaintiff's [protected characteristic].

Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks, citations, and

alterations omitted).  Thus, a "plaintiff must show that the conduct at issue is 'severe or

pervasive enough to create an objectively hostile or abusive work environment,' and 'the victim

must also subjectively perceive that environment to be abusive.'"  Romero v. DHL Express, Inc.,

No. 12-CV-1942 VEC RLE, 2015 WL 1315191, at *5 (S.D.N.Y. Mar. 24, 2015) (quoting

Feingold v. New York, 366 F.3d 138, 150 (2d Cir. 2004)).

In determining whether the alleged conduct is sufficiently severe, courts consider

"'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with [the] employee's work performance.'"  Feingold, 366 F.3d at 150 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).

"While Plaintiffs face a 'high hurdle with respect to the level and frequency of offensive conduct that must be present' to prove their hostile work environment claims, . . . 'to avoid dismissal under [Fed. R. Civ. P.] 12(b) (6), a plaintiff need only plead facts sufficient to support the conclusion that she was faced with harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'"  Ruiz v. City of New York, No. 14-CV-5231 VEC, 2015 WL 5146629, at *8 (S.D.N.Y. Sept. 2, 2015) (quoting DelaPaz v. N.Y.C. Police Dep't, No. 01 CIV. 5416(CBM), 2003 WL 21878780, at *3 (S.D.N.Y. Aug. 8, 2003) and then Patane, 508 F.3d at 113).  The Second Circuit has "repeatedly cautioned against setting the bar too high" at the motion to dismiss stage.  Patane, 508 F.3d at 113 (quotation marks omitted).

### 2.   **Application**

Defendants argue that Malloy's hostile work environment claim fails because "'heightened scrutiny' or 'excessive monitoring'" and "'negative comments'" do not give rise to a hostile work environment.  (No. 18 Civ. 4756, Def. Br. (Dkt. No. 27) at 25; No. 18 Civ. 4756, Def. Reply (Dkt. No. 41) at 16)  In addition to excessive monitoring, heightened scrutiny, and negative comments, however, Malloy alleges, inter alia, that:  Scruggs forced Malloy to come into work while she was recovering from surgery around August 2012 and thereafter issued Malloy a "Leave Restriction" letter which made it difficult for Malloy to take leave (No. 18 Civ. 4756, Pltf. Opp (Dkt. No. 37) at 25, 114); Malloy was disciplined for taking medically necessary bathroom breaks in January 2013 (id. at 27); after Malloy received a reasonable accommodation

for bathroom breaks in March 2013, Scruggs created a log and required all employees to sign in and out before using the restroom (id.); Scruggs threatened to call security when Malloy left a meeting to use the restroom in about March 2013 (id.); Scruggs engaged in "name-calling and berat[ed] [Malloy] publicly in front of her colleagues," including by calling her a "loser" (id. at 29); Scruggs refused to communicate verbally with Malloy, instructed her to communicate solely by email, and then did not respond to Malloy's emails (id. at 29-30); Scruggs would ask Malloy "why are you still here?" if she worked late, and then required Malloy to email an explanation to the human resources department (id. at 30); the Mission acknowledged that Ting was "bullying" Malloy and yet ignored her complaints about his conduct (id. at 31-32); Scruggs insisted on leaving a television turned on at a high volume even after Malloy complained that she had a migraine headache 2016 (id. at 32); and management encouraged Ting to make unsubstantiated complaints about Malloy that portrayed her as "odd, bizarre or hostile" and he repeatedly did so. (Id. at 39)

Considered collectively, these allegations are sufficient to withstand a motion to dismiss.[21]  See Ruiz, 2015 WL 5146629, at *8 ("'[T]to avoid dismissal under [Fed. R. Civ. P.] 12(b) (6), a plaintiff need only plead facts sufficient to support the conclusion that she was faced

---

[21]  In their reply brief submitted in connection with the 2018 Action, Defendants argue that Malloy fails to sufficiently allege that the hostile work environment was motivated by discriminatory animus.  (No. 18 Civ. 4756, Def. Reply (Dkt. No. 27) at 16-17))  This Court "'will not consider an argument raised for the first time in a reply brief.'"  In re Platinum-Beechwood Litig., No. 18-CV-10936 (JSR), 2020 WL 3497287, at *5 (S.D.N.Y. June 29, 2020) (quoting United States v. Yousef, 327 F.3d 56, 115 (2d Cir. 2003)).  In any event, Malloy has filed several EEO complaints and plausibly alleged that the hostile work environment was not just discriminatory but also retaliatory in nature.  (No. 18 Civ. 4756, Cmplt. (Dkt. No. 1) at 5, 21, 25; No. 18 Civ. 4756, Pltf. Opp. (Dkt. No. 37) at 24-25) see Sclafani v. PC Richard & Son, 668 F. Supp. 2d 423, 438 (E.D.N.Y. 2009) ("to establish a retaliatory hostile work environment, a plaintiff must satisfy the same standard that is applied generally to hostile work environment claims").

with harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'"); see also Hagan v. City of New York, 39 F. Supp. 3d 481, 500 (S.D.N.Y. 2014) ("[A] plaintiff need not provide a list of every alleged discriminatory remark and incident of harassment to state a claim for hostile work environment. . . . Because [plaintiff] identifies a number of specific events and generally alleges constant harassment, she has plausibly stated a claim."); see also Czerwinski v. N.Y. Dep't of Corrs. and Cmty. Supervision, 394 F. Supp. 3d 210, 222-25 (N.D.N.Y. 2019) ("Whether a retaliatory hostile work environment existed, whether it was causally connected to any of the potential protected activities, and whether it continued into the limitations period, are issues that are better addressed after discovery.").

## **CONCLUSION**

For the reasons stated above, Defendants' motions to dismiss (No. 18 Civ. 4756, Dkt. No. 26; No. 19 Civ. 6533, Dkt. No. 21) are granted in part and denied in part.  Defendants' motions are granted to the extent that the following claims will be dismissed:  (1) all NYSHRL, NYCHRL, ADA, Section 1981, and FMLA claims; (2) any claim based on Malloy's 2012 annual performance review or 2012 letter of reprimand; (3) any failure to accommodate claim based on the "Leave Restriction" letter issued to Malloy in September 2012 or on Malloy's reasonable accommodation request for light and noise sensitivity in or about 2016 or 2017; (4) any discrimination claim based on the failure to nominate Malloy for the Annual Innovation in the Use of Technology Award in 2010; (5) any discrimination claim based on Malloy's 2013 annual performance review; and (6) any retaliation claim based on the "superfluous" or

"voluminous" work that Malloy was assigned in May 2017.  Defendants' motions are otherwise

denied.  A copy of this Order has been mailed to the pro se Plaintiff by Chambers.

Dated: New York, New York
           September 18, 2020                          SO ORDERED.

                                                       _____
                                                       Paul G. Gardephe
                                                       United States District Judge